UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 22-cr-221 (RJL) |
| ) | |
| BENJAMIN GRABINSKI, ) | |
| ) | |
| Defendant ) | |
| ) | |

## MOTION TO SUPPRESS STATEMENTS

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), Benjamin Grabinski, through counsel, respectfully moves this Court to suppress at trial any and all statements he made to law enforcement officers because the statements were made involuntarily and obtained in violation of the Fifth Amendment of the U.S. Constitution and *Miranda v. Arizona*, 384 U.S. 436 (1966). An evidentiary hearing on this motion is requested.

### STATEMENT OF FACTS

Mr. Grabinski is charged in this case with one count of an attempted violation of protection of property used by foreign governments, in violation of 18 U.S.C. § 970(a), and one count of attempted arson in violation of 18 U.S.C. § 844(i). Indictment, ECF No. 11. The government alleges that, on June 9, 2022, Mr. Grabinski attempted to throw an unlit incendiary device at the Embassy of the Peoples' Republic of China ("the Embassy"). *See* Arrest Report, 33. The government alleges that the device consisted of a glass bottle filled with some unknown flammable liquid with an unlit cloth on top. *See id*. Evidence will show that as the bottle was thrown the unlit cloth fell to the ground outside the fence of the Embassy. The bottle landed inside the fence and broke. *See id*. The liquid poured out. *See id*. There was no fire. *See id*. Shortly after the bottle was thrown, United States Secret Service officer Sergeant Mas with at

least one other USSS officer arrested and detained Mr. Grabinski a few blocks from the Embassy. *See id*. Both officers were fully uniformed. *See id*. Evidence will show that after being detained the officers interrogated Mr. Grabinski and allegedly elicited from him a statement along the lines of "I tried to light it, but it didn't work, so I just threw it." Since USSS officers do not wear body-worn cameras, there is no recording of the interrogation.

## ARGUMENT

I. **ALL STATEMENTS MADE BY MR. GRABINSKI SHOULD BE SUPPRESSED BECAUSE THEY WERE INVOLUNTARY AND OBTAINED IN VIOLATION OF *MIRANDA*.**

    A.    **Mr. Grabinski's Statements Were Involuntary.**

Before introducing any statements at trial, either in its evidence-in-chief or as impeachment or rebuttal evidence, the government must prove that the statements were voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." *Mincey v. Arizona*, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. *See Fikes v. Alabama*, 352 U.S. 191, 197 (1957); *see also Gallegos v. Colorado*, 370 U.S. 49, 52 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case). Specifically, the Court must examine the efforts to overbear the defendant's free will in relation to his capacity to resist those efforts. *See Davis v. North Carolina*, 384 U.S. 737, 739 (1966); *Culombe*, 367 U.S. at 607. The Court must examine the defendant's "background, experience, and conduct," *North Carolina v. Butler*, 441 U.S. 369, 375 (1979), to determine whether his statements were the

product of a rational intellect and a free will, *Blackburn v. Alabama*, 361 U.S. 199, 208 (1980).

Here, any statements Mr. Grabinski made during questioning by law enforcement were involuntary and, therefore, must be suppressed. Mr. Grabinski was apprehended by uniformed officers and was not free to leave. The USSS officers had already detained Mr. Grabinski, placed him in custody, and were questioning him. Mr. Grabinski's military background and experience has trained him to respect agents of the United States and to answer their questions whether or not he prefers to. Furthermore, Mr. Grabinski's history of serious mental health diagnoses and involuntary civil commitments seriously undermine claims that he was answering officer questions under rational intellect and free will. No reasonable person in these circumstances with this background and experience would have felt free to disregard the officers' questions.

      **B.**      **Mr. Grabinski's Statements Were Obtained In Violation of *Miranda*.**

The Supreme Court has held that, "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the [Fifth Amendment] privilege against self-incrimination is jeopardized." *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). In order to protect the privilege, the Supreme Court set forth procedural safeguards requiring that, prior to custodial interrogation, an individual must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id*. at 479.

Statements made in response to custodial interrogation may be used against a defendant only if the defendant has been given the *Miranda* warnings and subsequently makes a knowing, voluntary, and intelligent waiver of these rights. *Id*. The government bears the burden of demonstrating that the *Miranda* warnings were given and that the defendant has made a

knowing, voluntary, and intelligent waiver. *Id*. "Interrogation under *Miranda* refers . . . to any words or actions . . . that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (internal quotations omitted). Critically, whether words are likely to elicit a response depends on the "perceptions of the suspect, rather than the intent of the police." *See id*.

At a hearing, the government will be unable to demonstrate that Mr. Grabinski was adequately apprised of his rights and that any waiver of his rights was knowing and voluntary. As argued previously, Mr. Grabinski was apprehended by uniformed officers and was not free to leave. The USSS officers had already detained Mr. Grabinski, placed him in custody, and were questioning him. All statements he made were in response to questioning by the officers. No reasonable person in these circumstances would have felt free to disregard the officers' questions which, being questions, were obviously likely to elicit a responses.

Therefore, Mr. Grabinski was interrogated in police custody while he was detained and was not free to leave. At the time he made the statements, Mr. Grabinski had not been properly advised of his *Miranda* rights nor had he made a knowing, voluntary, and intelligent waiver of those rights. Therefore, all statements Mr. Grabinski made to law enforcement officers in this case should be suppressed.

## CONCLUSION

For the foregoing reasons, and for any other reasons set forth at a hearing on this motion or in supplemental pleadings that this Court may deem just and proper, Mr. Grabinski respectfully requests that the Court grant this motion and suppress the use of all statements made by Mr. Grabinski to law enforcement agents in this case.

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Michelle Peterman
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
