**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES** | **Case No. 22-cr-00221 (RJL)** |
| **v.** | |
| **BENJAMIN GRABINSKI,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Mr. Grabinski asks this Court to dismiss this case, in which he is charged with throwing a Molotov cocktail at the Chinese Embassy, based on alleged violations of the Speedy Trial Act largely related to his transport for competency proceedings. But the Speedy Trial Act has not been violated. *First*, in a written order, the Honorable Robin M. Meriwether excluded the time related to Mr. Grabinski's transport for purposes of his competency proceedings. *Second*, at the outset of this case, the Government moved for Mr. Grabinski's pretrial detention. That motion has never been resolved, remains pending, and automatically tolls the Speedy Trial clock. *Third*, while transport-based delays longer than ten days are presumed to be unreasonable, that presumption can be rebutted, and the delays here—occasioned by COVID and the absence of a formal transfer order—were reasonable. *Finally*, should the Court find that the Speedy Trial Act has been violated, any dismissal of this case should be *without* prejudice, because there is no evidence that the Government acted in bad faith or intentionally delayed proceedings, because the serious nature of Mr. Grabinski's offense merits prosecution, and because Mr. Grabinski has not been prejudiced in his defense of this crime. For the following reasons, the Court should deny Mr. Grabinski's motion to dismiss.

## **BACKGROUND**

On June 10, 2022, Mr. Grabinski was charged by complaint with Damage to Property Used by Foreign Governments, in violation of 18 U.S.C. § 970(a) and Arson, in violation of 18 U.S.C. § 844(i).  That same day, the Government moved for Mr. Grabinski's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and (f)(2)(A).  The Government subsequently filed a memorandum in support of Mr. Grabinski's detention on June 16, 2022 and a detention hearing was scheduled for June 17, 2022.  That hearing did not proceed as the parties jointly requested that Mr. Grabinski be evaluated for competency.  The Government's motion for pretrial detention has never been ruled on.

On June 17, 2022, the Honorable Robin M. Meriweather ordered that Mr. Grabinski be evaluated for competency.  ECF No. 10 and Exhibit A.  The Order acknowledged that "a delay of more than ten days for transport is presumptively unreasonable."  *Id.* at 2.  Despite that, the Court ordered that "until the Court finds Mr. Gabrinski (sic) competent to stand trial, any 'delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant' will be excluded pursuant to 18 U.S.C. § 3161(h)(1)(A) in computing time for all purposes and calculations under the Speedy Trial Act."  This included "the thirty-day period during which Mr. Gabrinski (sic) is being evaluated, plus the time required for transport, plus fifteen days for the preparation of the report regarding Mr. Gabrinski's (sic) competency shall be excluded from Speedy Trial Act calculations."  *Id.*  The Order noted that defense counsel could object to any Speedy Trial Act exclusions and that counsel should do so "in a motion or at a hearing before the undersigned."  ECF No. 10 at 2.  Defense counsel has never challenged any exclusions based on this Order.

Based on the Court's Order, Mr. Grabinski was transferred out of Washington, D.C. by the U.S. Marshal's Service (USMS) to the Metropolitan Correctional Center (MCC) in Chicago, Illinois for evaluation.  USMS first transferred Mr. Grabinski to Grady County Law Enforcement Center in Chickasha, Oklahoma.  *See* Exhibit B, Declaration of Dia B. Boutwell ("Boutwell Decl."), ¶ 3.  The Justice Prisoner and Alien Transportation System (JPATS)—the agency responsible for transporting individuals in custody between prisoners, detention centers, and other locations—maintains its primary hub of aircraft operations in Oklahoma.  After arriving in Oklahoma, Mr. Grabinski gave a positive indication for COVID.  *Id.*  As a result, Mr. Grabinski was required to be quarantined.  After Mr. Grabinski successfully cleared quarantine, he was transferred to MCC for evaluation.  *Id.*  Mr. Grabinski arrived at MCC on August 12, 2022, but was again required to be quarantined pursuant to COVID-19 policies.  *See* Exhibit C, Sept. 14, 2022 BOP Extension Letter.  *Id.*  He was released from quarantine and his competency evaluation began on August 31, 2022.  Given these delays, BOP notified the Court that it would need additional time to conduct its evaluation.  *Id.*  Neither the Court nor defense counsel objected or raised any issue with this requested extension.  Mr. Grabinski's evaluation was completed by October 15, 2022 and a report was issued on October 27, 2022.

In the interim, two status hearings were held on August 25, 2022 and September 16, 2022. Following the September 16, 2022, the Honorable G. Michael Harvey excluded all time from September 16, 2022 to November 1, 2022 from calculations under the Speedy Trial Act. Specifically, Judge Harvey ordered "per Magistrate Judge Meriweather[']s prior Order in this matter, all time between September 16, 2022, and November 1, 2022, is TOLLED for purposes of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(A)."

A status hearing was held on November 1, 2022.  The November 1, 2022 hearing was the first hearing following Mr. Grabinski's competency evaluation.  At that hearing, a contested competency hearing was scheduled for December 20, 2022, to permit defense counsel time to engage an expert and challenge the Bureau of Prison's (BOP's) competency determination.  All time was excluded from November 1, 2022 to December 20, 2022.  Additionally, the Court noted in a minute order that the Government's motion for pretrial detention was still pending.

Following the competency hearing, on January 6, 2023, Judge Meriwether found that Mr. Grabinski was competent and ordered him to be returned to Washington, D.C.  Judge Meriwether did not address the Government's still pending motion for pretrial detention, but ordered, in a minute order, that Mr. Grabinski was to be returned to Washington, D.C.  Judge Meriwether did not issue a written order until January 27, 2023, and she did not issue a written order directed that Mr. Grabinski be returned to Washington, D.C. until February 27, 2023.  According to USMS, neither the minute order nor Judge Meriwether's competency order, provided them with sufficient notice or authority to transfer Mr. Grabinski.  Nor did MCC Chicago receive notice of the minute order.  Boutwell Decl., ¶ 10.  Instead, BOP believed that it was required to wait for a written order pursuant to the June 17, 2022 Order by Judge Meriwether, which specified that Grabinski was not to be moved "absent exigent circumstances, until the Court issues a further order for this transport back to this District."

Mr. Grabinski was returned to Washington, D.C. and a status hearing was held on April 12, 2023.  Time was excluded from April 12, 2023 until June 6, 2023.  The Government's still pending motion for pretrial detention was not resolved at that hearing.  A status hearing was set for June 26, 2023, but that hearing was vacated by the Court and rescheduled to August 1, 2023.

It is not clear from the docket in this matter that an order excluding the time from June 6 to July 30, 2023 was entered.[1]

On July 30, 2023, defense counsel filed a motion to continue that hearing to allow the parties to prepare plea paperwork and set a hearing date.  That motion requested an exclusion of time until the next hearing date.  On August 31, 2023, the Court vacated the plea hearing date and excluded time until the next hearing date.  On October 25, 2023, the Government filed a motion to schedule a status hearing to allow Mr. Grabinski to reject the Government's plea offer and to set trial dates.  The hearing was initially scheduled for November 16, 2023, but vacated and rescheduled to December 19, 2023.  On December 6, 2023, defense counsel filed a motion to suppress which is still pending.  *See* ECF No. 34.

The Government's motion for pre-trial detention has never been addressed, nor has Mr. Grabinski conceded the issue of detention.

## **ARGUMENT**

The Speedy Trial Act requires that a criminal defendant be brought to trial within 70 days of indictment, 18 U.S.C. § 3161(c)(1), absent certain exceptions pursuant to which time may be excluded from that 70-day clock.  18 U.S.C. § 3161(h).  Mr. Grabinski claims that "at least 175

---

[1] To the extent that such a request was not made on the record during the June 6, 2023 hearing, that was an inadvertent oversight by the Government.  During that period—June 6 to July 30, 2023—the Government and Mr. Grabinski's counsel were engaged in plea negotiations to resolve this case short of trial.  This included discussions concerning Mr. Grabinski's mental health, housing, and other plans following his release from incarceration.  Additionally, as this case involved an attack on a foreign embassy, the Government was required to consult with the U.S. Department of State who exchanged diplomatic communiques with the Chinese Embassy regarding the potential resolution of this matter.  The Government would not have engaged in these lengthy negotiations had it been aware that time was not being excluded under the Speedy Trial Act and would have requested that the matter be set for trial at the June 6, 2023 hearing.

days of non-excludable time have elapsed on the Speedy Trial clock." ECF No. 36 at 5. Mr. Grabinski calculates that time as follows:

- 35 days from August 11 to September 16, 2022 for transport during the pendency of Mr. Grabinski's competency proceedings;
- 86 days from January 6 to April 12, 2023 during Mr. Grabinski's transport back to D.C. from Chicago; and
- 54 days from June 6 to July 30, 2023.

Mr. Grabinski's calculations are wrong, and the Speedy Trial Act has not been violated.

*First*, Judge Meriwether expressly excluded all time related to transportation for Mr. Grabinski's competency proceedings in her June 17, 2022 Order. Therefore, the 35 days from August 11 to September 16, 2022, and the 86 days from January 6 to April 12, 2023 have not expired. *Second*, the Government's motion for pre-trial detention was made on June 10, 2022, and has remained pending since that time. That pending motion tolled the Speedy Trial clock in its entirety and continues to do so. *Third*, while delays related to transporting a defendant are presumptively unreasonable, *see* 18 U.S.C. § 3161(h)(1)(F), the delays here were reasonable and were occasioned by precautions related to COVID and a misunderstanding of what type of Court Order the BOP and USMS required to transfer Mr. Grabinski. Finally, should the Court find that there has been a violation of the Speedy Trial Act, any dismissal should be without prejudice because Mr. Grabinski is charged with a serious offense, the delays here were not the result of Government bad faith, and dismissal without prejudice would be a sufficient sanction.

## I.  **Judge Meriwether Excluded All Time Related to Mr. Grabinski's Competency Evaluation.**

As an initial matter, Judge Meriwether's June 17, 2022 Order properly excluded time for transport related to Mr. Grabinski's competency evaluation, including the 35 days from August 11 to September 16, 2022, and the 86 days for his return to D.C. Judge Meriwether's Order specifically found that "*any* 'delay resulting from any proceeding, including any examinations, to

determine the mental competency or physical capacity of the defendant' will be excluded pursuant to 18 U.S.C. § 3161(h)(1)(A) in computing time for all purposes and calculations under the Speedy Trial Act."  ECF No. 10 at 2 (emphasis added).  The Order clarified: "the thirty-day period during which Mr. Gabrinski (sic) is being evaluated, plus the time required for transport, plus fifteen days for the preparation of the report regarding Mr. Gabrinski's (sic) competency shall be excluded from Speedy Trial Act calculations."  *Id.*  While the Order recognized that delays related to transport of more than ten days are presumptively unreasonable, it notably did not limit the exclusion of time for transport to just ten days.  Instead, it stated that "the time required for transport," would be excluded.  Not some of the time, not just ten days of the time, but all of the time.  Tellingly, Judge Meriwether included specific time allotments for the other components of Mr. Grabinski's competency evaluation:  thirty days for the evaluation and fifteen days for the report.  She included no such specific allotment for transport.  This is also consistent with Judge Harvey's September 16 and 20, 2022 Orders which excluded time "per Magistrate Judge Meriweather[']s prior Order in this matter."  That is, based on the plain language of the June 17, 2022 Order, Judge Harvey appears to have understood it to exclude time related to Mr. Grabinski's ongoing competency evaluation.

Mr. Grabinski tries to avoid the clear language of Judge Meriwether's Order by claiming that she "ordered that a total of 55 days would be excludable under the Speedy Trial Act."  ECF No. 36 at 2.  Unfortunately for Mr. Grabinski, the number "55" appears nowhere in Judge Meriwether's order. Instead, Mr. Grabinski assumes what Judge Meriwether never ordered.  Specifically, Mr. Grabinski assumes that Judge Meriwether only intended to exclude ten days for transport which, when combined with the 45 days for the evaluation and report, yields 55 days.

But if Judge Meriwether had intended to solely exclude 10 days for transport, she would have.  It would have been as simple as noting—as she did with the evaluation and report components—that only ten days would be excluded.  Judge Meriwether did not solely exclude ten days for transport and therefore the 35 days between August 11 and September 16, 2022, and the 86 days from January 6 to April 12, 2023 are excluded.  As a result, there has been no violation of the Speedy Trial Act, as 16 days remain on the Speedy Trial clock.

## II.   **The Government's Still-Pending Motion for Detention Tolled the Speedy Trial Act Clock.**

Beyond any specific periods of exclusion, Mr. Grabinski's motion fails for an additional reason:  the Speedy Trial Act has been tolled since the Government's June 10, 2022 motion for Mr. Grabinski's detention.  The Speedy Trial Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C.A. § 3161(h)(1)(D).  This exclusion "is triggered by written and oral motions alike."   *United States v. Taylor*, 497 F.3d 673, 676 (D.C. Cir. 2007).   In *Henderson v. United States*, the Supreme Court interpreted the plain language of this exclusion and found that it "exclude[d] all time between the filing of and the hearing on a motion whether that hearing was prompt or not." 476 U.S. 321, 326–30 (1986).  The Court noted that this provision did not include any limiting language such as "a reasonable period of time," or a more explicit limitation of a set number of days. *Id.*  This is "a strong indication that exclusion of the[se] periods . . . was intended to be automatic." *Id.* at 327.  This conformed with the statute's legislative history which indicated that Congress did not intend to limit this exclusion.  Therefore, the Supreme Court found that "Congress intended [this] subsection. . . to exclude from the Speedy Trial Act's 70-day

limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'"[2]

Relying on *Henderson*, the D.C. Circuit has repeatedly emphasized that for "motions that require a hearing . . . all time is excluded, whether 'reasonably necessary' or not." *United States v. Bryant*, 523 F.3d 349, 359 (D.C. Cir. 2008). *See also United States v. Rice,* 746 F.3d 1074, 1081 (D.C. Cir. 2014) ("Regardless of whether the district court could have held a hearing on this motion earlier—the record does not make clear why it did not—the entire period of the motion's pendency is excluded."); *United States v. Holmes*, 508 F.3d 1091, 1096 (D.C. Cir. 2007) (noting that "[a]n anticipated hearing can toll the speedy trial clock" even if it is never held).

By law, time has been excluded from the Speedy Trial clock since June 10, 2022. The Government orally moved for Mr. Grabinski's detention and shortly afterwards provided a written motion in support of its request. This type of motion is the kind of motion for which a hearing is required. *See* 18 U.S.C. § 3142(f)(1)(A) and (E) ("The judicial officer *shall* hold a hearing . . . upon motion of the attorney for the Government). Mr. Grabinski has not conceded the issue of his detention. And no hearing has been held to address the Government's motion. Indeed, even through his competency proceedings, Judge Meriwether made clear that no determination had been made with respect to Mr. Grabinski's detention and that the Government's motion was still pending.

In *United States v. Beler*, under similar circumstances, Judge Howell found that the Government's motion for pre-trial detention tolled the Speedy Trial clock at least until a defendant was found not competent and committed to the custody of the Attorney General for restoration.

---

[2] The version of 18 U.S.C. § 3161(h)(1) interpreted by the Supreme Court identified this exclusion as subsection F rather than subsection D.

2019 WL 5789747, at *8-11 (D.D.C. Nov. 6, 2019). Judge Howell found that a pretrial detention motion—the very motion at issue here—is the type of motion that requires a hearing which was not held prior to the defendant's competency determination. *Id.* at *9. There, as here, she noted that the parties expected that this motion would have to ultimately be resolved because the docket reflected that the hearing had been continued. *Id*. Judge Howell expressly rejected the notion "that a government detention motion made orally and placed on the backburner while other proceedings occupy the court's and parties' attention can insulate lengthy delays from STA scrutiny . . . [would] run contrary to the STA's central purpose." *Id.* Instead, relying on the legislative history, text of the statute, and binding precedent, Judge Howell found that "Congress believed that pretrial motions—at least the ones requiring a hearing—cause delay from the time they are filed until they are heard and made that time period 'automatically' excludable." *Id.* at *11.

The only difference between this case and *Beler*, is that in *Beler*, the defendant was found not competent and ordered into competency restoration in the custody of the Attorney General. Therefore, Judge Howell reasoned that time was excluded up until the defendant was ordered into the Attorney General's custody, which effectively mooted the Government's motion for pretrial detention. But the opposite is true here. Mr. Grabinski was found competent and ordered to return to D.C. to allow his trial to move forward. He was not committed to the custody of the Attorney General and his detention status remains a live issue. As such, by law, time has been and continues to be excluded and there has been no violation of the Speedy Trial Act.

### III.   **The Delays in Transporting Mr. Grabinski Were Reasonable.**

Even assuming that the Speedy Trial clock was not tolled by Judge Meriwether's Order or by the Government's pending motion for pretrial detention, the delays in transporting Mr.

Grabinski to and from his competency evaluation were reasonable and should be excluded.   Ten days of delay resulting from transportation are automatically excluded from the Speedy Trial Act time limits regardless of whether the delay was reasonable. *See* 18 U.S.C. § 3161(h)(1)(F). While statute imposes a presumption that "any time consumed in excess of ten days from the date an order of removal directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable" *id*., "the government may rebut this presumption by offering an explanation for the delay." *United States v. Phinizy*, 2019 WL 2570038, *5 (D.D.C. June 21, 2019), *citing United States v. Noone*, 913 F.2d 20, 26 (1st Cir. 1990).   Two reasonable but unfortunate events delayed Mr. Grabinski's travel to and from MCC for his competency evaluation.   *First*, Mr. Grabinski was delayed due to travel restrictions and quarantine protocols necessitated by the COVID-19 pandemic.   *Second*, Mr. Grabinski's return to D.C. was delayed by the docketing of a minute order ordering his return to D.C., rather than a formal written order.

A significant portion of the delays in transporting Mr. Grabinski were due to the unprecedented crisis of the COVID-19 pandemic.   JPATS is the agency responsible for transporting individuals in custody between prisoners, detention centers, and other locations. JPATS is managed by the USMS and is one of the largest prison transport networks in the world. Before the COVID-19 pandemic, JPATS completed over 150,000 prisoner transfers per year, moving prisoners between judicial districts, correctional institutions, and foreign countries. JPATS accomplishes this by, among other things, operating a fleet of aircraft to move prisoners over long distances more economically and with higher security than commercial airlines.   JPATS's primary hub of aircraft operations is located in Oklahoma. Prisoners who are transferred nationally are typically briefly held over by JPATS/USMS in local facilities in Oklahoma in close proximity to JPATS' hub of aircraft operations.

During the COVID-19 pandemic, BOP established more restrictive movement protocols, reducing the ability of JPATS to swiftly move prisoners between locations. Capacity on aircraft and ground vehicles has been reduced due to social distancing requirements. Prisoners are also separated for transportation based on whether the movement is a BOP trip or a USMS trip. These public safety measures essentially cut transportation capacity in half because JPATS must fly to the same airports twice to deliver BOP and USMS prisoners separately on lighter-than-usual flights. Additionally, JPATS has adopted public health measures requiring that prisoner movements not take place within 14 days of a suspected or confirmed exposure to COVID-19. As a result of these precautions, prisoner transportation times have increased dramatically during the COVID-19 pandemic.  Specifically, during the period of time when Mr. Grabinski was being transported, due to the limitations imposed by COVID, it was unusual for JPATS to be able to transfer detained individuals in less than 30 days.

These COVID-19-based delays were evident here and delayed Mr. Grabinski in his travel to and from MCC.  As reflected in the Government's repeated updates to defense counsel and the Court, a significant portion of the delays here were caused by mandatory COVID-19 quarantine protocols, first in Oklahoma and then in Chicago.  Mr. Grabinski was transferred to Oklahoma— JPATS' travel hub—for ultimate transfer to Chicago.  But following a positive indication for COVID, Mr. Grabinski was required to be quarantined.  He could not be further transferred until he cleared COVID protocols in Oklahoma.  As soon as Mr. Grabinski cleared COVID protocols, he was transferred to Chicago.  Unfortunately, upon his arrival in Chicago, once again Mr. Grabinski was required to quarantine.  These periods of quarantine—combined with the related limitations on prisoner transport—delayed Mr. Grabinski's competency evaluation.  Indeed, Judge

Meriwether made this factual finding in her order finding Mr. Grabinski competent:   "Mr. Grabinski's transfer to a Bureau of Prisons facility was delayed due to COVID-19 quarantining."

Delays occasioned by COVID-19 have been found to be excludable under the Speedy Trial Act.  *See*, *e.g.*, *United States v. Cortez*, 2021 WL 534866, *5 (D. Mass. Feb. 12, 2021) ("in light of the difficulties the COVID-19 pandemic has caused to prisoner transportation and to the operations of detention facilities, here the delay was reasonable, and it certainly was not due to 'ordinary institutionalized delay'") (quoting *United States v. Noone*, 913 F.2d 20, 25 (1st Cir. 1990); *United States v. Durbesula*, 2020 WL 6572640, *4 (W.D.N.C. Nov. 8, 2020) ("The 26 days to transfer the defendant was reasonable given COVID-19 conditions. . . . The pandemic . . . greatly affected the manner of transportation, the need for the local detention facilities to account for quarantines, and for the Court to address the defendant in light of such quarantines.").  And they should be found to be excludable here, because experts determined that they were necessary to ensure the health and safety of Mr. Grabinski, his fellow detainees, and BOP and USMS staff.

Following his competency evaluation, Mr. Grabinski's return to D.C. was delayed for a different reason:  a written order requiring his transport back to D.C. was not issued.  While a minute order was issued on January 6, 2023, according to both BOP and USMS, this was insufficient to place them on notice that Mr. Grabinski was to be transported back to D.C.  On February 27, 2023, after being notified of the USMS's position, Judge Meriwether issued a written order directing Mr. Grabinski's return to D.C.  USMS then initiated Mr. Grabinski's transfer back to D.C.  A prisoner request was entered on March 16, 2023, and Mr. Grabinski reached D.C. by March 28, 2023, quicker than most detained individuals during that time period.  While USMS's requirement of a written order delayed Mr. Grabinski's travel, it is not unreasonable for USMS to require a written order when transferring a detained individual hundreds of miles from one

13

jurisdiction to another.  Therefore, the delay attributable to the form of Judge Meriwether's transfer order was reasonable and should also be excluded.

## IV.    <u>Any Dismissal Should be Without Prejudice.</u>

Based on the foregoing, there has been no violation of the Speedy Trial Act.  Should the Court find a violation, however, any dismissal should be without prejudice.

In determining whether to dismiss with or without prejudice, the Court must consider the following factors: (1) the seriousness of the offense; (2) the facts and circumstances which led to dismissal; and (3) the impact of reprosecution on the administration of justice. 18 U.S.C. § 3162(a)(2). Prejudice to the defendant is also one of other factors the Court may consider. *See United States v. Bittle*, 699 F.2d 1201, 1208 (D.C. Cir. 1983).  Courts have determined that "dismissal with prejudice requires a showing of a 'truly neglectful attitude,' 'bad faith,' a 'pattern of neglect, or other serious misconduct, as well as prejudice to the defendant.'" *United States v. Gaskin*, 364 F.3d 438, 451 n.3 (2nd Cir. 2004) (*citing United States v. Taylor*, 487 U.S. 326, 338-39 (1988)).  All of these factors weigh in favor of dismissal *without* prejudice.

### A.  *Mr. Grabinski's Attempted Bombing of the Chinese Embassy is Serious.*

*First*, Mr. Grabinski's offense is indisputably serious.  Mr. Grabinski attempted to throw a Molotov cocktail into a foreign embassy.  And this was not a spur-of-the-moment decision.  Mr. Grabinski planned this.  He traveled from Chicago to Washington, D.C. to express his anger at the Chinese government.  Once in Washington, he repeatedly harassed the Embassy and security personnel.  On May 29, 2022, Mr. Grabinski threw rocks at the Embassy, breaking windows.  After doing so, he shouted "Next time, it's going to be a firebomb."  Mr. Grabinski kept this promise. On June 9, 2022, Mr. Grabinski returned with a homemade Molotov cocktail.  Specifically, he approached the Embassy carrying a glass bottle filled with a liquid accelerant and a piece of cloth

protruding from the top.  Mr. Grabinski tried multiple times to light the cloth before throwing it over the fence and into Embassy property.  This was not an unruly protest against the U.S. relationship with China.  This was a concerted and repeated attempt to harm other people and protected property, escalating from throwing rocks to throwing an explosive device.

Congress has indicated just how serious this type of offense is.  Mr. Grabinski is currently charged with Arson in violation of 18 U.S.C. § 844(i).  This offense carries a mandatory minimum term of imprisonment of 5 years.  In other words, Congress determined that individuals who commit offenses like Mr. Grabinski should be incarcerated for a significant period of time.  If Mr. Grabinski is convicted, he will necessarily be sentenced to greater time in jail beyond the time he has already spent detained.  *C.f.*, *United States v. Reina-Del Rosario*, 281 F. Supp. 3d 253, 254 (D.P.R. 2017) (dismissing indictment with prejudice where punishment likely would have been for less time than defendant already spent in detention in a "case of simple illegal reentry")

Mr. Grabinski's intended target makes his conduct all the more concerning.  The U.S. endeavors to protect foreign embassies and foreign government officials and staff on U.S. soil. How we treat attacks on foreign embassies on our soil is considered by foreign governments when determining how to treat attacks on U.S. embassies, consulate, and personnel.  Put differently, the failure to prosecute conduct by individuals like Mr. Grabinski could have consequences for our own citizens abroad.

Given the seriousness of this offense, any dismissal should be without prejudice. *United States v. Fawster*, No. 1:12-MJ-364, 2013 WL 4047120, at *4 (D.R.I. Aug. 9, 2013) (dismissing complaint with prejudice where offense, pulling fire alarms, was non-violent and was among those crimes classified as "the least serious offenses prosecuted in the federal court").

### B.  The Facts and Circumstances Leading to Any Delays Do Not Merit Dismissal.

The delays in this case—driven by issues associated with Mr. Grabinski's competency evaluation—do not merit dismissal.

Both parties and the Court have an obligation to ensure that Mr. Grabinski is competent to stand trial. The Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. *Drope v. Missouri*, 420 U.S. 162, 171–172 (1975). The Government did not request a competency screening of Mr. Grabinski to delay his trial rights. To the contrary, the Government sought a screening to ensure he could effectuate those rights. Defense counsel did not object to the initial screening request. *See* ECF No. 5. And notably, defense counsel joined in the request for Mr. Grabinski to undergo a full competency evaluation. *See* June 17, 2022 Minute Order (referring to a "Joint Oral Motion by the Government and BENJAMIN GABRINSKI (sic) to Commit Defendant to Custody of Attorney General for the purpose of obtaining further competency evaluation.")

Mr. Grabinski's transport to and from his competency evaluation was unfortunately delayed. But it was delayed largely by an unprecedented global pandemic and reasonable health precautions that were put in place due to the pandemic. Mr. Grabinski was placed on quarantine status to ensure the health and safety of his fellow detainees as well as BOP and USMS personnel. While Mr. Grabinski was in transit and in quarantine, the Government kept the Court and defense counsel updated on Mr. Grabinski's whereabouts and status, and repeatedly communicated to USMS the importance of quickly transporting Mr. Grabinski. It would be baseless to suggest that

the Government at any point sought or orchestrated these delays to prevent Mr. Grabinski from quickly going to trial. *Cf. United States v. Montecalvo*, 861 F. Supp. 2d 110, 117 (E.D.N.Y. 2012) (dismissal with prejudice where years passed without any documented effort by the government to move case forward, which demonstrated lackadaisical attitude toward prosecution).

Defense counsel takes issue with the "circuitous route" that USMS employed to transport Mr. Grabinski and the fact that the evaluation was not conducted locally at St. Elizabeth's Hospital. Mr. Grabinski was taken directly from D.C. to USMS' transport hub in Oklahoma. By using a centralized hub, USMS can ensure that all detained individuals—including Mr. Grabinski—are transported as quickly and efficiently as possible. The USMS and the Government certainly did not re-route Mr. Grabinski out of his way to delay his trial.

Further, the Government attempted to have Mr. Grabinski evaluated locally by the D.C. Department of Behavioral Health. As reflected in Dr. Grant's June 15, 2022 assessment (Exhibit D, Dr. Grant's June 15, 2022 letter), Mr. Grabinski refused to participate in her evaluation of him. As a result, Dr. Grant recommended that Mr. Grabinski be "transferred to a federal Bureau of Prison facility where he can participate in a comprehensive evaluation and receive psychiatric treatment." Defense counsel did not object to Dr. Grant's recommendation, which was endorsed by the Court in its June 17, 2022 Order.

For these reasons, the facts and circumstances occasioning any delay here do not warrant dismissal with prejudice.

### C. The Administration of Justice Would Not Be Served by Dismissal With Prejudice.

The administration of justice would not be served by dismissal with prejudice. The Government sought in good faith to ensure that Mr. Grabinski was fit to stand trial by seeking a competency determination. The USMS worked in good faith, within the parameters required by

an unprecedented pandemic, to transport Mr. Grabinski to and from his competency hearing. There is simply nothing to suggest anything but earnest and diligent efforts to bring Mr. Grabinski to trial.

Nor has any delay secured some sort of tactical benefit for the Government. *C.f.*, *United States v. Klanseck*, 246 F. Supp. 3d 1198, 1204 (E.D. Mich. 2017) (dismissing indictment with prejudice where the government "attempted to hedge its bets by delaying [the] proceedings" to seek additional prison time if its efforts to negotiate a plea in an unrelated criminal proceeding against the same defendant did not result in a disposition). To the contrary, the Government's witnesses will now have to testify concerning events far more remote in time than when this case was initially charged. It is possible that the passage of time will impact their ability to sharply recall events which could give jurors pause when weighing the evidence against Mr. Grabinski.

Additionally, there has been no prejudice to Mr. Grabinski with respect to his trial preparations or his ability to defend himself against these charges. There is no claim that Mr. Grabinski has lost access to witnesses or evidence, or that his counsel's investigation into the underlying facts of this case have been in any way stymied. *Cf. Klanseck*, 246 F. Supp. 3d at 1205-1206 (granting dismissal with prejudice where an important defense witness was no longer available); *United States v. Mancuso*, 302 F. Supp. 2d 23, 34 (E.D.N.Y. 2004) (granting dismissal with prejudice where evidence was lost during delay). Indeed, counsel for Mr. Grabinski has only recently indicated an interest in having its own expert re-examine the forensic evidence in this case. To the Government's knowledge, that re-examination has not yet taken place. In other words, it appears that Mr. Grabinski was not prepared to go to trial within seventy days and would not be prepared for a trial scheduled in the immediate future.

Notably, defense counsel did not raise these concerns until lengthy plea negotiations did not result in a plea offer that was acceptable to Mr. Grabinski.  Based on defense counsel's calculations, Mr. Grabinski's Speedy Trial right was violated on February 10, 2023.  But defense counsel made no motion to dismiss based on this alleged violation until January 10, 2024, almost one year later.  The reason is apparent:  Mr. Grabinski was not prepared to go to trial one year ago and was interested in resolving this case short of trial.

To the extent the Court finds a violation of the Speedy Trial Act, a dismissal *without* prejudice is a sufficient sanction.  The Government would be required to present the facts of this case to a new grand jury, likely through a witness whose recollection of events is less sharp.  That grand jury would have to determine anew whether the Government's evidence is sufficient to warrant a new indictment.  For these reasons, our courts have recognized that "[d]ismissal without prejudice is not a toothless sanction."

### **CONCLUSION**

For all of the foregoing reasons, the Mr. Grabinski's motion to dismiss should be denied. Alternatively, any dismissal should be without prejudice.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Cameron A. Tepfer*
Cameron A. Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
Alexander R. Schneider
Michigan Bar. No. #P71467
Special Assistant United States Attorney
United States Attorney's Office
601 D. Street, NW
Washington, DC 20579