UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 22-cr-221 (RJL) |
| BENJAMIN GRABINSKI, | |
| Defendant. | |

**Reply in Support of Motion to Dismiss Indictment for Violation of the Speedy Trial Act**

The government makes three arguments that necessitate a reply. First, it claims that Magistrate Judge Meriweather excluded "all time related to transportation for Mr. Grabinski's competency proceedings in her June 17, 2022 Order." Gov't Opp'n at 6. As Judge Meriweather's Order shows, however, the government is mistaken. *See* Order, ECF No. 10. Second, it argues that its motion for pretrial detention "automatically tolls the Speedy Trial clock," even though none of the delays in this case are attributable to the motion because it was stayed (and dormant) pending the resolution of Mr. Grabinski's competency evaluation. *See* Gov't Opp'n at 1. As several judges in this Court have recognized in identical situations, however, such motions do not toll the Speedy Trial Clock. *See, e.g.*, *United States v. Phinizy*, 18-cr-323 (ABJ), 2019 WL 2570038 (D.D.C. June 21, 2019). Finally, the government recognizes that "while transport-based delays longer than ten days are presumed to be unreasonable," it claims the presumption can be rebutted here. Gov't Opp'n at 1. Not so. Each argument will be addressed more fully below.

**A. In contrast to the government's claims, Magistrate Judge Meriweather's order did not exclude the transportation delays in this case.**

The government first argues that "Judge Meriweather's June 17, 2022 Order properly excluded time for transport related to Mr. Grabinski's competency evaluation, including the 35 days from August 11 to September 16, 2022, and the 86 days for his return to D.C." Gov't Opp'n at 7-8. This argument can be quickly disposed of because it is based on a complete misunderstanding of Judge Meriweather's Order and the relevant statutory framework.

Judge Meriweather's Order largely tracks the statutory language from the Speedy Trial Act (18 U.S.C. § 3161) and Insanity Defense Reform Act (18 U.S.C. § 4141 et seq.), which "work together to require the timely resolution of cases like this one" involving questions of incompetency. *See United States v. Carter*, 583 F. Supp. 3d 94, 99 (D.D.C. 2022). Below shows the relevant statutory framework and language (on the left) along with the language from the Court's order (on the right):

| | Statutory framework and language: | Language from Court order: |
|---|---|---|
| 1 | "[I]f there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," *see* § 4141(a), the IDRA requires the court to make a finding as to whether a preponderance of the evidence establishes that the individual is, in fact, incompetent. *See* § 4142(d). To make this determination the court must conduct a competency hearing. *See* §§ 4142(a), (c), & 4247(d). | "[T]he Court finds reasonable cause to believe that Mr. Gabrinski may be suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly with his defense. . . . The Court will set a date for the competency hearing at the August 25, 2022 status hearing or at a subsequent status hearing." ECF No. 10 at 1, 3. |
| 2 | Prior to the hearing, the court "may order" a psychiatric or psychological examination, which allows the court to "commit the person for a reasonable period, but not to exceed ***thirty days***[.]" §§ 4241(b), 4247(b). | "ORDERED that, pursuant to 18 U.S.C. §§ 4241(b) and 4247(b), Mr. Gabrinski is hereby committed to the custody of the Attorney General, and that a psychiatric or psychological examination of Mr. Gabrinski |

| | | |
|---|---|---|
| | | be performed at a federal medical center or other facility that is suitable for such psychiatric or psychological examination for a period not to exceed ***thirty days, commencing upon his arrival at such a facility***[.]" *Id.* at 1 (color and emphasis added). |
| | "A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the government[.]" § 4247(c).<br><br>The IDRA specifically authorizes a court to order "a reasonable extension, but not to exceed fifteen days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." § 4147(b). Thus, the maximum amount of commitment authorized for the initial competency determination is ***45 days***. *See id.* | "ORDERED that after such examination, a written report shall be prepared pursuant to 18 U.S.C. § 4247(c), which shall include the examiner's opinion as to whether Mr. Gabrinski suffers from a mental disease or defect rendering him mentally incompetent . . . Such report shall be sent to the Court for filing under seal within ***forty-five days of Mr. Gabrinski's arrival at the evaluating facility***, and an electronic copy shall be sent to" the parties. *See id.* at 2-3 (color added) |
| 3 | The following is excluded from the Speedy Trial Act calculations:<br><br>"delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ***ten days*** from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]" 18 U.S.C. § 3161(h)(1)(F). | ORDERED that the United States Marshals Service ("USMS") shall transport Mr. Gabrinski to a designated facility for the examination. The Court requests that, given the need to timely evaluate the Mr. Gabrinski and the ***deadlines imposed by 18 U.S.C. § 3161(h)(1)(F)—pursuant to which a delay of more than ten days for transport is presumptively unreasonable***—the USMS shall make every effort to transfer Mr. Gabrinski promptly and directly to the designated facility, without intermediate stops or holdovers[.]" ECF No. 10 at 2 |

| 4 | The following period is also excluded from the Speedy Trial Act calculations:<br><br>"delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant[.]" 18 U.S.C. § 3161(h)(1)(A) | "ORDERED that, until the Court finds Mr. Gabrinski competent to stand trial, any 'delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant' will be excluded pursuant to 18 U.S.C. § 3161(h)(1)(A) in computing time for all purposes and calculations under the Speedy Trial Act.<br><br>Thus, the thirty-day period during which Mr. Gabrinski is being evaluated, plus the time required for transport, plus fifteen days for the preparation of the report regarding Mr. Gabrinski's competency shall be excluded from Speedy Trial Act calculations.<br><br>To the extent that the United States seeks to exclude additional time, it may present arguments in support of those exclusions in a motion or at a hearing before the undersigned. Likewise, to the extent that the defense objects to the foregoing calculation of Speedy Trial Act exclusions, it may present arguments in support of reconsideration of those calculations in a motion or at a hearing before the undersigned."  ECF No. 10 at 2 (spacing added for clarity). |

As the above makes clear, Judge Meriweather did not exclude all transportation delays "related to Mr. Grabinski's competency evaluation" as the government claims.  Gov't Opp'n at 7.  She merely tracked the language from the Speedy Trial Act which states that transportation delays beyond 10 days is presumptively unreasonable.  *See* ECF No. 10 at 2.

The government mistakes this obvious point and instead makes several arguments that only demonstrate its confusion.  First, the government argues that Judge Meriweather "notably did not limit the exclusion of time for transport to just ten days." Gov't Opp'n at 7.  However,

this claim cannot be squared with Judge Meriweather's order, wherein she specifically stated that "given the need to timely evaluate Mr. Gabrinski and ***the deadlines imposed by 18 U.S.C. § 3161(h)(1)(F)—pursuant to which a delay of more than ten days for transport is presumptively unreasonable***—the USMS shall make every effort to transfer Mr. Gabrinski promptly and directly to the designated facility, without intermediate stops or holdovers[.]" ECF No. 10 (emphasis added).  Moreover, even if the Order was silent on this issue—which it is not—that would be immaterial given that the Speedy Trial Act expressly states that transportation delays exceeding ten days are presumptively unreasonable—*i.e.*, a Court's *silence* in an order does not trump *explicit wording* in an applicable statute, as the government seems to be arguing.  *See* § 3161(h)(1)(F).

Second, the government claims Judge Meriweather excluded *all* transportation delays because she "specifically found that "*any* 'delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant' will be excluded pursuant to 18 U.S.C. § 3161(h)(1)(A) in computing time for all purposes and calculations under the Speedy Trial Act."  Gov't Opp'n at 7 (emphasis in original).  However, when read in context, this exclusion relates to the period *after* Mr. Grabinski arrived at the hospital for his examination to determine his competency—it has nothing to do with transportation delays to (or from) the hospital.  *See, e.g.*, *United States v. Williams*, 917 F.3d 195, 202-03 (3d Cir. 2019) (agreeing with the First, Fifth, and Sixth Circuit that "section 3161(h)(1)(A) cannot be interpreted to exclude *all* periods of delay related to examinations because section 3161(h)(1)(F) places a specific limitation on the excludability of an unreasonable period of delay in transporting a defendant to the site of that *very* examination").  To hold that

Judge Meriweather's exclusion of time under § 3161(h)(1)(A) (relating to the time consumed by examinations at the hospital) excludes *all* periods of delay relating to the examination including transportation delays "would render section 3161(h)(1)(F) superfluous." *Id.* Given "the cardinal principle of statutory construction" that statutes should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant," *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001), the government's arguments must fail.

Finally, the government claims that "Mr. Gabrinski tries to avoid the clear language of Judge Meriweather's Order by claiming that she 'ordered that a total of 55 days would be excludable under the Speedy Trial Act'" but "[u]nfortunately for Mr. Gabrinski, the number '55' appears nowhere in Judge Meriweather's Order." Gov't Opp'n at 7. The government again appears to be confused. As Judge Meriweather recognized, "the deadlines imposed by 18 U.S.C. § 3161(h)(1)(F)" make a "a delay of more than ten days for transport presumptively unreasonable." ECF No. 10 at 2. And, as Judge Meriweather recognized, § 4247(b) authorizes courts to order a 30-day psychiatric examination, plus an extension of up to 15 additional days for good cause—*i.e.*, § 4247(b) authorizes a maximum 45-day exclusion for psychiatric examinations. *See* ECF No. 10 at 1. Hence, when Judge Meriweather excluded "the thirty-day period during which Mr. Gabrinski is being evaluated, plus the time required for transport, plus fifteen days for the preparation of the report regarding Mr. Gabrinski's competency," ECF No. 10 at 2, she was quite obviously excluding 30 days for the psychiatric examination (as authorized by § 4247(b)), plus 10 days for transportation delays to the facility (as authorized by § 3161(h)(1)(F)), plus 15

days additional days (*i.e.*, the maximum excludable days, as authorized by § 4247(b)), amounting to a total of 55 days.[1]  *See* ECF No. 10 at 2.

In short, the government's arguments that Judge Meriweather excluded *all* time for transportation is immediately undermined by her Order.  *See* ECF No. 10.  As the Order makes clear, she followed the relevant statutory framework and excluded only 10 days for transportation delays, which renders (1) the 35-days between August 11 and September 16 (relating to transportation to the hospital), and (2) 86 days of the 96-day period between from January 6 to April 12, 2023 (relating to transportation from the hospital), presumptively unreasonable.  "To the extent that the United States [sought] to exclude additional time," the Court ordered it to "present arguments in support of those exclusions in a motion or at a hearing before the undersigned."  *Id.* at 3.  It never did.  The government cannot now seek a retroactive exclusion, long after the fact, based on the mistaken premise that the Court previously ordered it.  As such, 111 days must be counted against the 70-day clock based on transportation delays.

**B.  The government's reliance on § 3161(h)(1)(D) is misplaced because the delays did not "result from" any pretrial motion; they indisputably "resulted from" the government's failure to transport Mr. Grabinski to a designated facility.**

The government next attempts to rely upon § 3161(h)(1)(D) of the Speedy Trial Act, which excludes "delay *resulting from* any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D) (emphasis added).  According to the government, *all* time related to Mr. Grabinski's case is

---

[1] This figure does not include the excludable 10-days for transportation delays relating to Mr. Grabinski's return from the hospital.  Even so, in the calculations in Mr. Grabinski's opening motion and here, he has consistently factored this additional 10-day exclusion for the delays relating to Mr. Grabinki's return in his STA calculations.

excluded because the government had previously filed a motion for pretrial detention at his initial appearance on June 10, 2022, which "automatically tolls the Speedy Trial Clock." Gov't Opp'n at 1. In effect, the government asks this Court to sanction what it believes is a loophole to the Speedy Trial Act: if it files a motion at the beginning of a case (here, a detention motion at the initial appearance on June 10, 2022) that is effectively stayed pending the resolution of other matters causing lengthy inexcusable delays (here, the competency proceedings that were not resolved until January 6, 2023, and involved well over 100 days of inexcusable transportation delays), then it can still rely upon that early, dormant motion to insulate those inexcusable delays from STA scrutiny. If accepted, such a sweeping loophole could swallow the STA entirely. This cannot be so for multiple reasons.

***First,*** the plain text of § 3161(h)(1)(D) prevents this subsection from applying to this case. It is beyond dispute that the delay in this case is not "resulting from" any pretrial motion; it "result[ed] from" the government's failure to transport Mr. Grabinksi to a designated facility for a psychological evaluation in a timely fashion. *See id.* "To that end, the delays in this case [a]re caused by (i.e., resulted from) a failure to transport the defendant to [a designated facility] for court-ordered psychiatric treatment." *United States v. Sparks*, 885 F. Supp. 2d 92, 101 (D.D.C. 2012). In other words, the plain text requires that "a given exclusion must actually be the cause of the excludable event to be applicable." *Id.*

Judge Amy Berman Jackson's *Phinizy* decision is directly on point. *See* Order, *United States v. Phinizy*, No. 18-cr-323, ECF No. 29 (ABJ) (D.D.C. Mar. 18, 2019) ("Order"); *see also* Mem. Op., ECF No. 64, 2019 WL 2570038 at *2 (D.D.C. June 21, 2019) ("Mem. Op.") (summarizing Mar. 18 Order). There, as here, the government made an oral motion for pretrial

detention that was effectively stayed pending a determination of the defendant's competency. There was a lengthy delay in transporting the defendant for his competency evaluation and the defendant moved to dismiss the indictment for violation of the Speedy Trial Act. Just as here, the government argued that the Speedy Trial Act had not been violated because the Act excludes the time resulting from any pretrial motion, and the detention motion remained pending. Judge Jackson rejected this argument because the "delay caused by transporting defendant to the competency hearing did not 'result from' the pretrial detention motion." *See* Order, ECF No. 29 (Order), at 3. The Court noted that the Supreme Court has interpreted "resulting from" to mean "proceedings involving" the pretrial motions. *Id.* (citing *Bloate v. United States*, 599 U.S. 196, 205 n.9 (2010)). "And in *United States v. Tinklenberg*," wrote the Court, "the Supreme Court stated that this provision in the Act 'is best read to instruct measurement of time actually consumed by consideration of the pretrial motion.'" *Id.* (quoting *Tinklenberg*, 563 U.S. 647, 656 (2011)). Based on Supreme Court precedent and the STA's plain text, Judge Jackson found that the transportation delays were not excludable under the STA because the "delays in transporting defendant for his competency evaluation did not *result from*" the pendency of the motion for pretrial detention because the competency evaluation was not a proceeding involving, or time consumed considering, the motion for pretrial detention." *Id.* (emphasis added).

That same reasoning and result applies here. Because the relevant delays did not "result from" the pretrial motion, the government's reliance on § 3161(h)(1)(D) is misplaced. The delays "resulted from" the government's failure to transport Mr. Grabinski to a designated facility for a psychological evaluation in a timely fashion, triggering the 10-day transportation restriction in § 3161(h)(1)(D).

The government relies principally on *United States v. Beler*, No. 19-mj-100 (BAH), 2019 WL 5789747 (D.D.C. 2019), where Judge Howell was faced with a stark choice of releasing a clinically determined incompetent defendant or rejecting an earlier (correct) interpretation of the STA in *United States v. Sparks*, 885 F. Supp. 2d 92 (D.D.C. 2012) and *United States v. Phinizy*, No. 18-cr-323, ECF No. 29 (ABJ) (D.D.C. Mar. 18, 2019).  She ultimately chose the latter, creating a split of authority in this District.  But her reasoning is not persuasive because she fails to grapple with the plain text of the statute (discussed above) and binding canons of statutory interpretation (discussed below).  *See Beler*, 2019 WL 5789747, at *8-*11.  In contrast to her findings in that case, numerous courts that have analyzed the interplay between § 3161(h)(1)(F)) (*i.e.*, the 10-day transportation restriction) and other overlapping exclusions in the Speedy Trial Act, have found the 10-day restriction applies where the delay "*results from*" the transportation delays.  *See, e.g.*, *Sparks*, 885 F. Supp. 2d at 101 (D.D.C. 2012); *United States v. Lewis*, 484 F. Supp. 2d 380, 388 (W.D. Pa. 2007) (reasoning courts "should consider the cause to which the delay in question is fairly attributable" because the "statute, after all, speaks in terms of excluding 'delay *resulting from*' one type of occurrence or another"); *United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839, 843 (W.D. Tex. 2009) (rejecting the government's reliance upon other overlapping provisions of the STA because "[t]he delay here is a result of the failure to transport Defendant for treatment, and this contingency is specifically provided for in § 3161(h)(1)(F)"); *United States v. Dellinger*, 980 F. Supp. 2d 806, 812 (E.D. Mich. 2013) (rejecting the government's invocation of § 3161(h)(4) because "the Court finds it untenable to conclude that an unreasonable transportation delay due to negligence by the U.S. Marshals Service 'resulted from' Defendant's mental incompetence").

**Second**, the government's interpretation is not only undermined by the plain text, but also by at least three bedrock rules of statutory construction: (1) specific terms prevail over general ones, (2) courts do not read statutes in ways that create internal contradictions, and (3) they do not read statutes in ways that make parts of the statute superfluous.  Under the government's reading, even though § 3161(h)(1)(F) specifically provides that transportation delays in excess of 10 days "shall be presumed to be unreasonable," it claims that transportation delays extending far in excess of 10 days are nevertheless okay, because, another, more general, provision of the Act permits blanket Speedy Trial exclusions—§ 3161(h)(1)(D).  But the government has it exactly backwards—specific terms prevail over general ones.  And at least three Supreme Court cases say so.[2]  *See, e.g.*, *Bloate v. United States*, 559 U.S. 196, 208 (2010) ("a specific provision" in the STA "controls ones of more general application"); *United States v. Tinklenberg*, 563 U.S. 647 (2011); *Henderson v. United States*, 476 U.S. 321, 328 (1986).

    In *Tinklenberg*, for example, the Supreme Court reviewed the Sixth Circuit's decision in *United States v. Tinklenberg*, 579 F.3d 589 (6th Cir. 2009) (*Tinklenberg I*), where the Sixth Circuit rejected the government's argument that "*any* delay associated with a competency evaluation from the date of the order directing the evaluation until completion of the competency hearing,

---

[2] As do many other cases involving other federal statutes. *See, e.g.*, *Gonzlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) ("A specific provision controls one of more general application."); *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *United States v. Stewart*, 104 F.3d 1377, 1387 (D.C. Cir. 1997) ("Under the canon of statutory construction dictating that specific statutory provisions modify general ones, even if D.C. Superior Court judges were left out of § 3141, their inclusion in § 3142 with specific reference to pre-trial release indicates that they are authorized to grant release under the Act.").

including delay from transporting a defendant for the evaluation, is excludable under § 3161(h)(1)(a)." *Tinklenberg I*, 579 F.3d at 596.  According to the Sixth Circuit, "[r]eading § 3161(h)(1)(A) to allow unlimited time for transporting a defendant to a place of examination . . . would create an internal conflict in the statute, since § 3161(h)(1)(F) expressly limits the reasonableness of the transportation period to ten days."  *Id.*  The Sixth Circuit ultimately dismissed the indictment with prejudice on Speedy Trial grounds.  *Id.* at 600.  On review, although the Supreme Court disagreed with the Sixth Circuit's precise calculations on the number of excludable days, it agreed with its order to dismiss the indictment with prejudice under the STA, thereby affirming Sixth Circuit's ruling that the specific provision of subparagraph (h)(1)(F) controlled over the more general application of (h)(1)(A).  *See Tinklenberg II*, 563 U.S. at 663 ("[T]he court's ultimate conclusion that Tinklenberg's trial failed to comply with the Speedy Trial Act's deadline is correct").

Similarly, in *Henderson*, the Supreme Court read the exclusions contained in the STA "in connection with" each other.  476 U.S. at 328.  In doing so, it held that "prompt disposition" of a motion under § 3161(h)(1)(D) must be interpreted with reference to the 30-day limitation contained in § 3161(h)(1)(H),[3] such that "prompt disposition" must be interpreted to mean disposition of a motion within 30 days of that motion's being "under advisement" by a court.  *Id.* at 329.  In other words, the "Supreme Court held that a period of delay that is excludable under one subsection . . . may be limited by specific language contained in a wholly separate

---

[3] For ease of reference, these section numbers have been updated to correspond with the current version of the STA; *Henderson* references "§ 3161(h)(1)(F)" and "§ 3161(h)(1)(J)" from an older version.

subsection[.]" *See United States v. Williams*, 917 F.3d 195, 203 (3d Cir. 2019) (interpreting *Henderson*).

Tying these cases together are at least two controlling takeaways: (1) the exclusions in the STA are to be read "in connection with" each other, with each operating independently and within its own sphere; and (2) when the exclusions overlap, the more general provision may be limited by more specific ones, so that all provisions are given effect. These controlling takeaways are fatal to the government's reading. There can be no dispute that subparagraph (h)(1)(F) is more specific to the delay in this case than (h)(1)(D)—*i.e.*, the delay *results from* the transportation issues rather than the pretrial motion. Nor can there be any dispute that the 10-day restriction in § 3161(h)(1)(F) is more specific than the blanket exclusions provided for in § 3161(h)(1)(D). Under the bedrock canon that "general language of a statutory provision . . . will not be held to apply to a matter specifically dealt with in another part of the same enactment," § 3161(h)(1)(F) must control. *Bloate*, 559 U.S. at 208.

**Finally,** the government's interpretation is undermined by Congressional intent. The "manifest purpose" of the Speedy Trial Act, as its name indicates, is to "ensur[e] speedy trials." It is all about time—70 days. *See* 18 U.S.C. § 3162(a)(2). And Congress specifically inserted the 10-day transportation restriction "out of a Congressional desire that the Marshals Service not delay transporting prisoners for economic reasons, such as waiting for more prisoners to be assembled before incurring the cost of moving them." *United States v. Dellinger*, 980 F. Supp. 2d 806, 815 (E.D. Mich. 2013); *see also United States v. Castle*, 906 F.2d 134, 138 (5th Cir. 1990) ("The setting of ten days as presumptively unreasonable seems to have been a compromise, with a deliberate limitation on flexibility in this section of the Act, rather than leaving transportation

time to be excluded under some general standard of reasonableness."). The government's interpretation would circumvent Congress's judgement through creating an obvious loophole—so long as it files a pretrial motion, then even if it is dormant, stayed, or moot, "defendants who are subjected to extraordinary transportation delays at the hands of the U.S. Marshals Service would otherwise be without recourse under the Speedy Trial Act, contrary to the apparent purpose of § 3161(h)(1)[F]." *United States v. Lewis*, 484 F. Supp. 2d 380, 387 (2007). "Congress could not reasonably have intended to limit transportation exclusions along these lines." *Dellinger*, 980 F. Supp. 2d at 813.

In short, as numerous other courts have held, the government's arguments should be rejected. None of the delays in this case "result from" the government's pretrial detention motion; the bulk of the delays in this case "resulted from" the government's failure to transport Mr. Grabinksi to a designated facility for a psychological evaluation in a timely fashion, triggering the 10-day transportation restriction in § 3161(h)(1)(F). Accordingly, the 35-day period between August 11 and September 16 (relating to transportation delays to the hospital), and at least 86 days of the 96-day period between from January 6 to April 12, 2023 (relating to transportation delays from the hospital), are presumptively unreasonable, meaning 121 days must be counted against the 70-day clock based on transportation delays.

### C. The government cannot rebut the presumption that the transportation delays in this case were unreasonable.

As a fallback position, the government argues that "the delays in transporting Mr. Grabinski to and from his competency evaluation were reasonable and should be excluded." Gov't Opp'n at 11. According to the government, "[t]wo reasonable but unfortunate events delayed Mr. Grabinski's travel to and from MCC for his competency evaluation." Gov't Opp'n

14

at 11.  "*First*, Mr. Grabinski was delayed due to travel restrictions and quarantine protocols necessitated by the COVID-19 pandemic." *Id*.  "*Second*, Mr. Grabinki's return to D.C. was delayed by the docketing of a minute order ordering his return to D.C., rather than a formal written order."  *Id*.  Despite the government's valiant attempts to say otherwise, no amount of creative reimaging or reconstructing of the delays at issue in this case can transform them into being "reasonable."

Beginning with the first excuse, the government largely ignores the central issue.  Judge Meriweather's Order told the government *not* to transport Mr. Grabinski to holdover facilities; instead, it "***shall***"  "***make every effort to transfer Mr. Grabinski promptly and directly to the designated facility, <u>without intermediate stops or holdovers</u>*."  ECF No. 10 at 2 (emphasis added).  Instead of following Judge Meriweather's order, the government flouted it, sending Mr. Grabinski on a circuitous route, from Washington, D.C. to the holdover Grady County Law Enforcement Center in Chickasha, Oklahoma (on June 5, 2022); then to the Metropolitan Correctional Center in Chicago, Illinois (on August 12, 2022):[4]



---

[4] On return, it performed the reverse of the circuitous route, transporting Mr. Grabinksi from the Metropolitan Correctional Center in Chicago, Illinois, back to the holdover Grady County Law Enforcement Center in Chickasha, Oklahoma (on March 20, 2023); and then to the D.C. Central Detention Facility in Washington, D.C. (on March 28, 2023).

The government dedicates substantial space discussing the Justice Prisoner and Alien Transportation System's ("JPATS") procedure for transporting prisoners, how it's the "primary hub of aircraft operations is located in Oklahoma," and how during Covid-19 "it was unusual for JPATS to be able to transfer detained individuals in less than 30 days." Gov't Opp'n at 11-12. But "Courts have routinely found that institutional delay alone is an insufficient basis to overcome the presumption of unreasonableness." *United States v. Banks*, No. 2:15-cr-168, 2019 WL 6213153, at *3 (W.D. Pa. Oct. 28, 2029); *United States v. Taylor*, 821 F.2d 1377, 1384 (9th Cir. 1987*), rev'd on other grounds*, 487 U.S. 326 (1988) (finding that a delay to accommodate the U.S. Marshals Service, in its desire to effect economical transportation of prisoners in larger groups, was unreasonable); *United States v. Jervey*, 630 F. Supp. 695, 697 (S.D.N.Y. 1986) (finding "ordinary institutionalized delay is not an excuse," and when the Speedy Trial Act "was passed Congress knew all about the customs and practices of the prison bus"); *United States v. Smith*, No. 05-cr-40002, 2006 WL 83120, at *3 (D. Kan. Jan. 11, 2006) ("Although the Court does not find that the delay was caused by bad faith on the part of the government, institutional delay is an insufficient basis to overcome the presumption of unreasonableness Congress intended to attach to periods of transportation in excess of ten days."); *United States v. Phillips*, No. 17-cr-01, 2017 WL 1885492, at *3 (W.D. Va. Apr. 18, 2018) ("[O]rdinary institutionalized delay is not an excuse . . . Delays resulting from the USMS using fixed routes to transport prisoners do not constitute extraordinary events.").

The institutional delays in this case are even less reasonable given that the Court requested the government to transport Mr. Grabinski "directly to the designated facility, without intermediate stops or holdovers." ECF No. 10 at 2. If not for the government's flouting of the

Court's order, many of the logistical delays relating to transportation and Covid-19 would not have occurred—*e.g.*, if Mr. Grabinski was transported "directly to the designated facility," there would have been (i) no Covid-19 or isolation in Chickasha, Oklahoma; (ii) no missed flight in Chickasha, Oklahoma; and (iii) no delays in Chickasha, Oklahoma (amounting to 37 days).  In short, the transportation delays in this case are a creature of the government's own making.  The government attempts to focus this Court's attention on the logistical obstacles it faced, but the reasonableness of the delay must be judged in terms of how the government flouted the Court's order which would have avoided the logistical problems in the first place.

The reasonableness of the delay must also be judged in terms of the far more sensible alternatives the government refused to consider or pursue that were consistent with the Judge Meriweather's order and required by the relevant statutory framework.  Judge Meriweather specified that the psychiatric or psychological examination could "be performed at a federal medical center ***or other facility that is suitable for such psychiatric or psychological examination*[.]**"  ECF No. 10 (emphasis added).  In other words, the government could have avoided all the logistical problems had it simply performed the competency evaluation more locally—*e.g.*, at St. Elizabeth's hospital, which is roughly 5 miles away from the D.C. jail (rather than on a circuitous route, roughly 2,217 miles around the country):



The government not only had authorization to place Mr. Grabinski in a local facility based on the Court's order, ECF No. 10, but also had clear statutory authorization to contract with the D.C. government or other more local facilities to perform the evaluation under the Insanity Defense Reform Act. *See* 18 U.S.C. § 4247(i) ("The Attorney General . . . may contract with a State, a political subdivision, a locality, or a private agency for confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter."). The government's refusal to exercise its clear authority to contract with St. Elizabeths or other more local facilities is a refusal to "conduct [the evaluation] in the suitable facility closest to the court," consistent with 18 U.S.C. § 4247(b). And its refusal to contract with local facilities only further establishes that the the time-consuming obstacles it faced were a creature of its own making. The logistical problems were completely unnecessary and avoidable had the government abided by the Court's order to transport Mr. Grabinski directly to the designated facility. And they were even more unnecessary considering the far more sensible and local facilities the government refused to consider. As such, the 35 days (between August 11 and September 16) relating to Mr. Grabinski's transport to the hospital are not excludable under the STA.

The government's second excuse relating to the 86 days of presumptively unreasonable transportation delays on the return from the hospital fair no better. While the government fully recognizes that "a minute order was issued on January 6, 2023," Gov't Opp'n at 13—wherein Judge Meriweather specifically "ORDERED that Mr. Gabrinski shall be released from the custody of the Attorney General (given the conclusion of the competency evaluation and hearing), is remanded into the custody of the United States Marshals Service for transport to this

District, and shall be transferred to Washington, D.C. for further proceedings," *see* Min. Order (Jan. 6, 2023)—it takes the absurd position that it was reasonable for the government to overlook the Court's minute order because the USMS requires a written order. *See* Gov't Opp'n at 13. Specifically, the government claims that Judge Meriweather's order was "insufficient to place the [BOP and USMS] on notice that Mr. Grabinski was to be transported back to D.C." because the USMS requires a "written order." *See* Gov't Opp'n at 14.

As every party in a courtroom knows, minute orders are every bit as binding as a judge's formal order in writing. If the U.S. Marshals Service requires a written order—which is a dubious proposition, as the government points to no formal policy supporting it—then the assigned prosecutor (or Clerk of Court) should have printed the minute order and given it to the U.S. Marshals Service. In similar circumstances—where a court's order was never delivered to the U.S. Marshal Service—courts have not excluded the time under the STA. *See, e.g.*, *United States v. Bauer*, 286 F. Supp. 2d 31 (D.D.C. 2003) (dismissing case involving threatening to kill the President where Court's order relating to transportation was inadvertently "never delivered to the United States Marshal Service"); *United States v. Dellinger*, 980 F. Supp. 2d 806, 810 (E.D. Mich. 2013) (dismissing case involving threats to injure a Senator where the order relating to transportation "slipped through the cracks"); *United States v. Sparks*, 885 F. Supp. 3d 92, 95 (D.D.C. 2012) (discussing how case was previously dismissed without prejudice where delay was partially attributable to the fact that "the Order was apparently not transmitted by the Clerk of the Court to the United States Marshals Service" on two separate occasions). The government offers no persuasive justification for violating the STA here. As such, at least 86 days of the 96-

day period between from January 6 to April 12, 2023 (relating to transportation delays from the hospital), are also inexcusable.

Finally, the government presents no genuine argument to justify the additional 54 days of inexcusable time between June 6 to July 30, 2023, meaning these days must also be counted against the 70-day clock. *See* Gov't Opp'n at 5 n.1 (noting the failure to request an exclusion under the STA "was an inadvertent oversight by the Government"); *see also id.* at 10-13 (presenting reasonableness-based arguments to justify the transportation delays, but offering no argument to justify the 54 days between June 6 and June 30, 2023).

In sum, the combination of non-excusable days totals at least 175 days. This figure includes (1) the 35 inexcusable days between August 11 and September 16, relating to transporting Mr. Grabinski to the hospital; (2) the 86 days of the 96-day period between from January 6 to April 12, 2023, relating to transporting Mr. Grabinski from the hospital; and (3) the 54 days between June 6 and July 30, 2023 of non-excluded time. Failure to bring a defendant to trial by the STA's 70-day deadline "entitles him to dismissal of the charges." *Bloate*, 559 U.S. at 199. For the reasons in the opening brief and reply, Mr. Grabinski respectfully requests that the Court dismiss the indictment with prejudice.

Respectfully submitted,

A. J. KRAMER
Federal Public Defender

_____/s/_____
BENJAMIN FLICK
Research & Writing Attorney

MICHELLE PETERSON
Chief Assistant Federal Public Defender

Federal Public Defender's Office
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004